# KANKAKEE WATER COMPANY
## v.
## NAPOLEON REEVES.

*Water Companies—Negligent Construction of Water Tower—Damage to Adjacent Property Owner.*

In an action brought against a water company to recover damages for injury to plaintiff's premises, caused by defendant's constructing a water tower in a negligent manner upon an adjacent lot, so that water leaked therefrom upon plaintiff's premises, this court holds, that the verdict in favor of plaintiff was sustained by the evidence, and that the record was free from error.

[Opinion filed December 12, 1892.]

APPEAL from the Circuit Court of Kankakee County; the Hon. ALFRED SAMPLE, Judge, presiding.

Messrs. H. K. WHEELER and WILLIAM POTTER, for appellant.

Messrs. WILLIAM R. HUNTER and JOHN SMALL, for appellee.

MR. JUSTICE LACEY. This was a suit by appellee, the owner of a house and lot, for damages done it, by means of appellant erecting a water tower on two lots adjoining, in such a negligent manner as to leak water and overflow appellee's premises and fill his cellar with water, and thereby render his house less useful and inhabitable. There was a trial and verdict for appellee for the sum of $357, upon which judgment was rendered.

The appellant's lots, two in number, were each fifty feet front and 100 feet in depth and adjoining, making a plat 100 feet each way, and appellee owned one lot on the south and adjoining appellant's lots. The appellant's lots

were the dominant and appellee's the servient heritage, although under the facts of the case this is immaterial. In the year 1885, appellee built a house on his lot and moved into it with his family, and in the year 1886 the appellant built a water tower within ten feet of the north line of its north lot, the tower being 124 feet high and twenty feet in diameter, a parcel of its system of city water works. The appellee in his amended declaration set out substantially two grounds of action in his declaration. First. That appellant had wrongfully and injuriously built the said water tower and reservoir on its said ground near the dwelling house of appellee and filled and kept filled the said reservoir with water, and for the want of proper care and diligence, large quantities of water were caused to leak and flow from said tower onto and upon appellee's premises, thereby wetting and injuring the appellee's premises, rendering them damp and unwholesome and scarce fit for habitation, annoying and incommoding appellee in his use and occupation of his dwelling and premises. Second. That the said tower was so negligently erected as to render it dangerous and a menace to the lives of all persons occupying the building by reason of its danger of falling on and destroying the building and washing it to pieces, thereby destroying the lives of the occupants in the house, so that no prudent person would occupy the same, and thereby the premises had been vacant and unoccupied, and dilapidated and of no value to appellee.

On the trial, the following question of fact was submitted to the jury, viz.: "First. Do you find the plaintiff sustained damages to his property by reason of water escaping from the tower of defendant, solely on account of the waste pipe and defect of construction of tower by leaving leaks in the same?" The jury answered, "Yes." "And for a verdict, we, the jury, find the defendant guilty and assess plaintiff's damages at $357." From this finding it appears that in estimating the appellee's damages the jury found the same was caused solely by water flowing from the waste pipe and leakage through the joints of an improperly constructed

Kankakee Water Company v. Reeves.

water tower. Hence, this would exclude the allowance by the jury of any fanciful damages, such as unsightliness of tower, etc., and other like damages, which appellant's attorney thinks might have been allowed. After a careful perusal of the evidence, we are constrained to hold that the appellee's premises were seriously damaged by water escaping from the water tower and that they were rendered practically uninhabitable thereby, to such an extent that he practically lost the use of them for a long space of time after he ceased to occupy them himself. That this tower was negligently constructed, so that it leaked, there was abundant evidence. There was no question that it leaked badly, and to hold that in that condition it was properly constructed, would be to hold that no tower of the kind could be constructed so as to be free from leakage, which would be an absurdity. Whether there was negligence in constructing the water tower or not is immaterial, as appellant was bound to take care of its water and not allow it to be cast on appellee's premises to his injury. The verdict of the jury as to amount of damages was clearly sustained by the evidence on account of the loss of rents alone, saying nothing of the damage to the property itself; but by the instruction of the court asked for by appellant, appellee's damages were restricted to those that had occurred up to August 26, 1890, the date of the commencement of the suit. That is, to the use and occupation of the premises and other incidental damages, up to that date, but nothing for the permanent depreciation of the value of the property itself. Whether this instruction was right or wrong appellant can not complain, as it is for its benefit and given on its own motion.

The third of appellee's instructions is not open to the objection made, that it allows the jury to give damages for the fancied danger from the falling and bursting of the water tower. The jury were expressly told in appellant's instructions that no such damages could be allowed, and its special verdict showed that none such were allowed, and during the trial no attempt was made to show such damages.

We see no error in the refusal of the court to give certain refused instructions of appellant; they were either not the law, or had already been given in substance.

The power of the appellee to have avoided damages by tiling or ditching the water escaping from the water tower off from his premises, was submitted to the jury by instructions asked for and given for appellant. The jury found against appellant on that point, and we think such finding was based on sufficient evidence. After a careful examination of the evidence, we fail to discover any reversible error in the record. The judgment of the court below is therefore affirmed.

*Judgment affirmed.*